BOOTH ET UX *v.* MASON ET UX, ET AL

5-3947                                    406 S. W. 2d 715

Opinion delivered October 10, 1966

*Harold C. Rains Jr.,* for appellants.

, *N. D. Edwards* and *Gean, Gean & Gean,* for appellees.

CARLETON HARRIS, Chief Justice. Roscoe R. Booth and Nellie Booth, his wife, came to Arkansas in July, 1960, from the state of Oregon for the purpose of locating in this state. The Booths desired to purchase a farm, and contacted Roy Taylor, a real estate dealer, living at Alma, Arkansas. Mr. Booth requested Taylor to find a place, and Taylor contacted Curtis Mason and wife, and a Mr. Jennings (who owned a farm adjoining that of Mason), and these people agreed to sell their farms. Taylor showed Booth over the properties, and the lat-

ter made a $500.00 down payment, the total purchase price to be $30,000.00, of which the Masons would receive $25,000.00, and Jennings would receive the sum of $5,000.00. On August 16, 1960, Booth gave his check in the amount of $29,500.00 to Taylor in full payment, and received deeds to the property. On July 22, 1965, the Booths instituted suit against the Masons,[1] Taylor, and the Trustees of the Chastain Church of Christ, the complaint containing various allegations.

It was first alleged that the Booths purchased the Mason property with the understanding that it contained 136 acres, but they actually received by deed only 125 acres, and it was asserted that they had been damaged, by reason of the fraudulent and false representations, in the sum of $183.80 per acre, or a total of $2,021.80. Next, it was asserted that the Booths had paid an additional $1,425.68 because part of the property was included in the Soil Bank, and they were told that they could not obtain immediate possession unless this payment were made, since Mason had not received the Soil Bank check; appellants contended that, as owners, they were to receive the check, and should not have been required to make the additional payment. It was further asserted that, after accepting the down payment on the land, the Masons had executed a deed to a third person for 7/10 of one acre, which land was supposed to go to the Booths under the agreement. Count Four alleged that taxes in the amount of $120.05 for the year 1960 had not been paid; that appellants were compelled to pay this amount and should recover it from the Masons. Finally, it was contended that the sale included certain land, which was being claimed by the Chastain Church of Christ, and it was prayed that title be confirmed in appellants, as against the trustees of the church; further, that they were entitled to receive the fair rental value of this property from the Masons; in the alternative, if it were held that the property belonged to the church, appellants asked that they be given judgment

[1] Apparently appellants were satisfied as to the land purchased from Jennings, since he was not included in the suit.

against the Masons in the amount of $229.75, the asserted value of this particular part of the land.

The Masons answered with a denial of the allegations, and further contended that every item in the complaint was barred by the statute of limitations and laches. Taylor demurred to the complaint, as not stating a cause of action against him, and the trustees of the church answered, contending that they were the owners of a particular 1¼ acres, wherein the church was located; that the Booths held no interest, and they asked that title be quieted in them.

The court sustained the Taylor demurrer, and, since there has been no appeal from that order, Taylor is no longer involved in this litigation. After hearing only the evidence offered by appellants, the court dismissed all counts of the complaint as to the Masons. Evidence was then offered by the Chastain Church Trustees, and the court dismissed appellants' complaint, and on the cross-complaint, quieted title in the 1¼ acres at issue in them. From the decree so entered, appellants bring this appeal.

We think the court was right in dismissing the first count. For one thing, though the complaint alleges that a written contract was entered into, it does not appear that there was such a writing. Mr. Booth, when asked if he had signed a contract, or "Offer and Acceptance," with Taylor, replied, "He made out a slip. I never did get a copy of the slip." This is the only testimony relating to any sort of writing. It is, of course, evident that no agreement was executed by the parties, and there is never any explanation of what the "slip" contained; for that matter, Taylor might simply have been making a memorandum for his own benefit. At any rate, there is no written contract in evidence, and if the agreement was oral, the cause of action was barred after three years. Ark. Stat. Ann. § 37-206 (Repl. 1962). However, there are additional reasons why appellants' contention on this point is without merit. Admittedly, Mason made no representations to Booth at all about the number of

acres contained in the farm; rather, Booth stated that this representation was made by Taylor,[2] and he asserts that Taylor was Mason's agent. The testimony on this point is rather indecisive. Here again, the evidence shows that Booth contacted Taylor, and asked the latter to locate a suitable farm. The record reflects the following testimony relative to the matter of agency: "Q. Now Mr. Taylor, you did find him a place and he eventually bought the Jennings and the Curtis Mason place? A. That is right. Q. Were you paid a commission for the sale of these places? A. I was. Q. By whom? A. By Mr. Mason and Mr. Jennings. Q. Did you act for him during this sale in preparing all the papers and carrying out the transaction? A. I did."

It is thus not at all clear whom Taylor represented (perhaps both). However, the matter of agency is really immaterial since it does not appear that appellants purchased this place on the basis of acreage, but simply bought it as a unit—in gross. When asked if he purchased the property by the acre, Mr. Booth unequivocally declared, "I did not. I bought it as a place." The deed itself makes no mention of the number of acres, and the Booths accepted the deed. For that matter, there is no competent evidence in the record that the Mason farm did not contain 136 acres. Mr. Booth testified, "That is what I am told." He then stated that he had measured the land himself, but Mr. Booth is not a qualified surveyor, and his answers to the questions relating to the measurements revealed that he worked from an erroneous premise.

Actually, Booth's testimony on this point indicated that, if he had a cause of action against anyone, it was Taylor, but the court sustained Taylor's demurrer, and no appeal was taken.

---

[2]Taylor, who also testified on behalf of appellants, emphatically denied that he had made any representations at all about acreage.

At the time of the sale, a portion of the property was in the Soil Bank, and the Soil Bank payment for the preceding year had not been paid. On August 16, 1960, the date of the deed, Booth testified that Mason said he (Mason) would have to "hold up the title on it until he got that Soil Bank check."[3] Booth, desiring immediate possession, paid Mason $1,425.68, which was the amount that Mason was due to receive under the Soil Bank payment program. There are several reasons why this point is without merit; suffice it to say, the payment appears to have been voluntarily made by Booth in order to enable him to get immediate possession.[4]

There is no need to discuss Point Three, which relates to the 7/10 of an acre deeded to a third party, since Mr. Booth stated that he was willing to "leave it like it is."

The fourth allegation was based on the fact that the 1960 taxes on the Mason property in the amount of $120.05 for the year 1960 had not been paid. Appellants, having paid the amount, assert that they are entitled to reimbursement. It will be remembered that the conveyance from the Masons to the Booths was executed on August 16, 1960, and *the 1960 taxes were not due to be paid until the third Monday in February, 1961.* The 1959 taxes, due in 1960, had apparently been paid. In the absence of a specific agreement to the contrary, appellants were obligated to pay the 1960 taxes, since these taxes were not due at the time the transaction between the Booths and Masons was completed.

As to Count Five, we think appellees, Trustees of the Chastain Church of Christ, clearly established their right to the property in question by adverse posses-

---

[3]The complaint alleged that Curtis Gardner, "the government representative of said soil bank," informed Booth that the transaction could not be completed until the soil bank check was received.

[4]Booth, as the owner, would have normally received the Soil Bank payment, which, of course, had been earned while Mason was the owner. The record does not reflect who subsequently received the check.

sion, and it is accordingly unnecessary to discuss other defenses raised by them. The testimony reflected, without dispute, that the property had been used as a church, at least, since October, 1947. It is fenced on the east and south (such fences being clearly evident when Booth first saw the property), with a road on the north and west sides. Though Booth contends that this land was included in his purchase in 1960, he made no complaint, nor questioned the right of the people who were using the church, until 1965. One wonders why the Booths waited nearly five years to institute their complaint (on all counts); for instance, the complaint alleges that they discovered the "shortage" in acreage "some months" after the transaction was concluded.

However, we think the court erred in dismissing the alternative prayer in the complaint relative to the 1¼ acres without hearing further proof. It is admitted that the description used in the warranty deed from the Masons to the Booths included the approximately 1¼ acres, comprising the church property. The Masons assert, in their brief, that a mutual mistake was made, in that the draftsman of the deed, the Commercial Bank of Alma, made an error in describing the lands; that Mr. Booth knew full well that the church property was not to be included in the purchase. It is true that Mr. Taylor testified that he had told Booth he was not buying the "church property," and Taylor also testified that no consideration was paid for that portion of the lands. Still, Booth testified emphatically that he was told that this 1¼ acres was a part of the property appellees were buying. Here, the statute of limitations does not come into play, for actions on writings under seal are not barred until five years after the cause of action accrues. Since the deed included the church property, appellants' count, based upon a breach of warranty is not barred. There is no *evidence* in this record relating to the deed, *i. e.*, who prepared it, if a mistake was made, or if so, why such a mistake was made. The action for breach of warranty, not being barred by limitations, and there being testimony (by Mr. Booth) that he was sup-

posed to receive the 1¼ acres under the sale, it was error for the court to dismiss this phase of the litigation at the conclusion of appellants' testimony. See *Werbe* v. *Holt*, 217 Ark. 198, 229 S. W. 2d 225.

Accordingly, the court's decree dismissing appellants' complaint is reversed insofar as it relates to the alternative prayer in appellants' complaint, *i. e.*, the matter covered in the previous paragraph of this opinion. In all other respects, the decree is affirmed.

It is so ordered.

BLAND, J., disqualified and not participating.